IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

IN RE:

MARCHELLE PAULK,

    DEBTOR.

MARCHELLE PAULK,

    PLAINTIFF,

vs.

GREEN TREE SERVICING, LLC,

    DEFENDANT.

BK 05-71384-CMS-13

AP 07-70016-CMS

## MEMORANDUM OF DECISION

This matter came before the court on debtor/plaintiff Marchelle Paulk's complaint asking the court to determine that the automatic stay of 11 U.S.C. § 362(a) was either still in effect; and/or, to reimpose the stay against creditor/defendant Green Tree Servicing, LLC's foreclosure attempt. The court has reviewed the facts in the context of applicable law, and holds that judgment must be entered **IN FAVOR** of the plaintiff; and **AGAINST** the defendant.

### FINDING OF FACTS

Plaintiff/debtor Marchelle Paulk's (Paulk's) complaint (AP 07-70016 Doc. 1) requested the court to enter an order determining whether or not the automatic stay had lifted in her pending bankruptcy case (BK 05-71384-CMS-13); and, if the stay had lifted, to reimpose the stay to prevent Green Tree, LLC's, (Green Tree's) foreclosure proceeding against her mobile home.

After a March 1, 2007 hearing, the court entered a preliminary injunction against the imminent foreclosure on the home, the debtor's residence. By agreement of the parties, the court also set trial on the merits for March 8, 2007. Both parties then appeared at the hearing, where they were offered an opportunity to present witness testimony, and/or to offer evidentiary exhibits.

1

A review of the record showed that Paulk filed her Chapter 13 case on May 7, 2005, scheduling a 1998 Southern Home mobile home as an asset in her list of personal property. She also claimed a homestead exemption in the mobile home. (BK Doc. 1) Paulk's schedules and plan indicated that she owed Green Tree a prepetition arrearage of $1,108.40, and stated a current mortgage payment of $354.00 per month due the creditor. Her plan proposed to cure the arrearage through plan distribution; and for the debtor to pay the current mortgage payments, beginning in June of 2005, directly to Green Tree.

No objections, by either creditors or Chapter 13 Trustee C. David Cottingham, were filed to this proposal as stated; and Paulk's plan was confirmed June 30, 2005. (BK Doc. 16) August 3, 2005, Green Tree filed Proof of Claim 8 for a $1,017.22 prepetition arrearage, which Cottingham was to pay through the confirmed plan.

Claim 8, as received by the court, stated it was based on "Arrears thru 5/05 – reg monthly pmnt $469.13 (includes insurance of $114.90)." The contract attached to the claim as verification (see Fed. R. Bankr. P. 3001) stated that the regular monthly payment was $354.23. Green Tree classified itself as a secured creditor for distribution purposes, listing a post-confirmation principal balance of $46,507.02 as well. The attached contract identified another party as the creditor's obligor, and home's owner on the certificate of title. The claim directed that Cottingham mail the fixed payments on the arrearage to a Saint Paul, Minnesota address; but requested that court notices in Paulk's case be directed to an address in Rapid City, South Dakota.

Claim 8 was amended by Green Tree on October 24, 2005 and increased to $2,617.38. There was a notation by the amount stating "post petition arrears added to pre arrears per d/atty request."

May 9, 2006, Green Tree filed a motion for relief from the automatic stay and co-debtor stay. (BK Doc. 35) This motion was captioned a **SECOND MOTION FOR RELIEF FROM AUTOMATIC STATE OF SECTION 362(a) AND CO-DEBTOR STAY OF SECTION 1301**; but was, in fact, the first such motion filed in this case. The motion raised the fact that Paulk was not Green Tree's customer although she lived in the mobile home. The contract is in the name of Glenn Thomas, as shown by the copy attached to Claim 8.

2

The motion alleged that a post-petition arrearage had accrued for the months of February through April of 2006 totaling $786.43, as well as a balance for insurance coverage "for the coverage period of February, 2006 at a cost of $78.00." An attached affidavit signed by Green Tree representative Sylvia Little stated that the current mortgage payments were $354.23, and were due on the 18th of each month." Little's affidavit stated that the fair market value of the mobile home at that point was $26,059.47.

Paulk and Green Tree settled the dispute by an agreed order conditionally denying relief from stay, but including a "drop-dead" clause against future default on the direct payments. The court directed Green Tree's attorney to prepare the order. (BK Doc. 40, court notes on the June 6, 2006 hearing.) The order subsequently executed by the court was entered June 12, 2006. (BK Doc. 43).

Pursuant to the June 12, 2006 order, Green Tree was allowed to file a claim for $475.00 for attorney fees. Apparently Paulk had paid the missing mortgage payments which were the basis of the relief from stay motion.

Under the settlement order, Paulk was also required to resume "making regular monthly mortgage payments (including principal, interest and insurance) as provided for in the Contract beginning with June, 2006 payment direct to Green Tree." (BK Doc. 43) However, the order itself did not recite a specific amount required for Paulk's "regular monthly payments." The "drop-dead" provision was effective beginning with the June 2006 payment and running for a 12-month period ending with May of 2007. During this time span, the right to foreclose would be triggered if Paulk failed to make any of her "regular monthly payments."

If the debtor defaulted during the 12 months, BK Doc. 43 empowered Green Tree to serve Paulk and her attorney with a notice of default, after which she would have 10 days from the date of the notice to cure the default. If she failed to pay the deficiency, the stay would lift by operation of law pursuant to BK Doc. 43, and the creditor could foreclose without further order of the court.

On November 20, 2006, Green Tree's attorney wrote Paulk, with a copy to her attorney, stating that she was in default for failure to make her "full" October and November, 2006 payments and was past due $510.97 (including principal, interest, and insurance).(Green Tree Exhibit 2) The

letter advised Paulk that she had until November 30, 2006 to pay Green Tree the $510.97 deficiency.

Attached to the November 20, 2006 letter was a document identified as "a current payment history" from Green Tree comparing the payments Paulk had been making ($354.23 each month); and the payment amounts the creditor asserted were actually due for the months of June through November, 2006. Summarized as follows, Green Tree's document showed the following amounts due:

June 18, 2006 - $354.85;

July 18, 2006 - $460.28;

August 18, 2006 - 354.85;

September 18, 2006 - $354.23;

October 18, 2006 - $432.67;

November 18, 2006 - $432.67.

Only one of these charges, a $354.23 September charge, was consistent to the penny with the amount the debtor had been paying; the amount stated in the original contract; and also with the amount of the payment as stated by Green Tree's representative in the affidavit supporting the motion for relief. Green Tree's summary, on which it based its enforcement of BK Doc. 43, listed four different variations on regular payments due, with a range in excess of $100.00.

At the March 8, 2007 trial on this AP, the debtor testified on her own behalf. Green Tree offered only documentary evidence.

Paulk testified, and the parties stipulated, that on October 21, 2006, she paid Green Tree $354.23, for October. Obviously, the creditor had already received the payment prior to the November 20, 2006 collection letter. The debtor also testified, and the parties stipulated, that on November 30, 2006, Paulk paid Green Tree still another $354.23.

Paulk said that, at this point, she believed she had paid both the October and November payments as required by the consent decree, and by Green Tree's 10-day notice of default. She testified that she had received no prior notices from Green Tree that her current mortgage payments had changed in any way, or that she was failing to pay the correct amount. She said she did receive

4

Green Tree's November 20, 2006 letter, but that she did not understand the attached schedule of payments.

On November 30, 2006, Green Tree's attorney again wrote Paulk's attorney and advised him that Green Tree treated the stay as having lifted for failure to pay pursuant to the November 20, 2006 letter. (November 30, 2006 was the same date that the debtor had made her second payment of $354.23 to Green Tree.) The creditor then initiated the foreclosure process.

As a result of this Paulk, on February 28, 2007, filed this adversary proceeding (AP 07-70016) asking the court to halt the foreclosure temporarily until the dispute could be tried on the merits. Her complaint asked the court to determine that she had not defaulted under the terms of the court's conditional stay order; or, in the alternative, to reimpose the stay on the equities due to her mistaken, but good faith, belief that she was paying the correct amount. In the future, Paulk agreed that she would pay Green Tree the correct amount each month to retain possession of the home.

The court tried AP 07-70016 on March 8, 2007, and took the dispute under submission for a decision following that hearing. The court's order temporarily halting the foreclosure proceeding has remained in place, pending that final resolution.

## CONCLUSIONS OF LAW

This court has jurisdiction of Paulk's Chapter 13 case under 28 U.S.C. § 1334(a). The court has jurisdiction of this contested matter, a core proceeding hinging on interpretation of the court's own orders and records, pursuant to 28 U.S.C. § 1334(b). Jurisdiction is referred to this Bankruptcy Court by the General Order of Reference of the United States District Courts for the Northern District of Alabama, Signed July 16, 1984, As Amended July 17, 1984.

The debtor's plan, as confirmed, required her to pay $354.00 per month (as scheduled) on her current mortgage payment directly to Green Tree. No objections were filed to confirmation of her plan as proposed; and no orders to modify the plan were ever sought or entered. Further, Green Tree, in drafting the consent order, included no payment schedule contradicting its own underlying affidavit that appeared to affirm the "regular monthly payment" at $354.23.

Green Tree did note on the face of Claim 8 that the current payment was $469.13 per month.

5

This is yet another monthly payment amount and does not match any of the payment amounts set out in the attachment to Green Tree's November 20, 2006 letter to Paulk.

These widely varying monthly payments have created this litigation over the "drop-dead" provision of BK Doc. 43 upon which Green Tree bases its right to foreclose. With these facts the court must determine an equitable/legal remedy that best balances the interests of both Green Tree and Paulk.

11 U.S.C. § 105(a) states the following:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

This section is a statutory institutionalization of the equitable powers bankruptcy courts/district courts sitting in bankruptcy exercised in former days under common law. See United States v. Swift & Co., et al., 286 U.S. 106, 114-16 (1932).

The Eleventh Circuit Court of Appeals, particularly beginning in mid-1990s, has supported a broad application of such powers, so long as the remedies are "necessary or appropriate" under Section 105(a), and do not conflict with other statutory provisions in the Bankruptcy Code itself.

> Sovereign immunity aside (for governmental entities under Section 106), § 105 uses the broad term "any" which encompasses all forms of orders including those that award monetary relief. The term "any" should be given this broad construction under the "settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect." ... Therefore, the plain meaning of § 105(a) encompasses any type of order, whether injunctive, compensative or punitive, as long as it is "necessary or appropriate to carry out the provisions of" the Bankruptcy Code. ...

See Jove Engineering, Inc. v. I.R.S. (In re Jove Engineering, Inc., 92 F.3d 1539, 1554 (11th Cir. 1996).

See also Hardy v. United States (In re Hardy), 97 F.3d 1384, 1389-90 (11th Cir. 1996); and Morgan v. United States (In re Morgan), 182 F.3d F.3d 775, 789 (11th Cir. 1999).

**I.**

**The stay has not lifted under the terms of the court's June 12, 2006, order.**

To begin the process, the court will first define the term "regular monthly mortgage payments" in BK Doc. 43 for purposes of the "drop-dead" clause. When Paulk filed her schedules

6

and proposed her plan, she included Green Tree as due a monthly payment of $354.00, slightly less than the amount in the original contract with Green Tree. The court entered the confirmation order, including distribution on the prepetition arrearage under the plan. It approved direct monthly payments to Green Tree based on the debtor's plan, since the creditor did not object to that payment at confirmation.

Green Tree did file Claim 8 after the plan was confirmed and did state on the claim that the current payment was $469.13 per month. There was no evidence that Paulk received a copy of this claim and Green Tree sought no modification of the confirmation order.

When the parties settled the motion for relief from stay, the BK Doc. 43 consent order provided that Paulk was to resume "making regular monthly mortgage payments (including principal, interest and insurance) as provided for in the Contract beginning with June, 2006 payment direct to Green Tree." The evidence in this case makes it clear that there is no "regular monthly mortgage payment". The evidence in this case reflects monthly mortgage payments of $354.23; $354.85; $432.67; $460.28; and $469.13.

Paulk testified that she had no prior knowledge that the payments had changed or that she was paying the wrong amount before the first November letter. She testified that she did receive the chart attached to the letter, but that she did not understand the chart. The court can see why. The chart included a bewildering array of payments. June 18, 2006, her payment was scheduled to be $354.85. The very next month it was increased over $100.00 to $460.28. Then, in August, the payment went back down to $354.85. The September payment decreased slightly to $354.23, the amount called for under the contract. The next month, the payments went up again by approximately $78.00 to $432.67. Then in November, the charge remained at $432.67. In this situation, Green Tree would have had to send Paulk a notice of changed payment almost every month to place her on any kind of notice that could be considered reasonable. The court has no idea where Paulk could have learned that her payments were varying so often and so widely.

The debtor's submissions showed she paid the current mortgage payment every month after the consent order was entered. Nevertheless, she apparently paid the wrong amount sometimes, and

7

Case 07-70016-CMS    Doc 17    Filed 04/02/07    Entered 04/02/07 15:19:09    Desc Main
Document      Page 7 of 10

the correct amount at other times, even though she paid the same amount every time.

When payments basically change every month, sometimes dramatically, <u>no</u> payments can be deemed "regular." Consequently, the court cannot find that a debtor had violated the terms of an order requiring her to make 12 "regular monthly payments" when the order fails to specify the amount required for each "regular monthly payment"; and when the creditor can produce no additional evidence showing the debtor knew the payments were constantly changing almost every month following entry of the "drop-dead" order.

The court must find Paulk's failure to make regular payments in excess $354.23 could not constitute a default triggering the "drop-dead" provision, lifting the stay by operation of law, or allowing Green Tree to foreclose without further order of the court.

The court must find that the stay which arose by operation of law under 11 U.S.C. § 362(a), and was adjusted and conditionally continued under BK Doc. 43, remains in place and has not been terminated by Paulk's failure to comply with any requirement of this court's June 12, 2006 order. The stay has never lifted by operation of law.

**II.**

**<u>Even if the stay had lifted, these facts would require that it be reimposed –
at least to the extent of granting both parties another chance to get it right.</u>**

Further, given the facts of this case, even if Paulk were in technical default under the terms of the June 12, 2006 order, equity would still demand that the stay be reimposed. Any equitable analysis must weigh the benefits of the debtor's retention of her home in a successful reorganization (a major policy goal under the Bankruptcy Code); against Green Tree's right to the most adequate protection possible of its <u>in</u> <u>rem</u> rights in the home (another major policy goal of the code).

The Paulk case is particularly complicated because she has no <u>in personam</u> liability or duty to Green Tree, increasing the creditor's potential risk. The only Paulk interest that can be protected in bankruptcy is an equitable right to remain in the home as necessary to completion of her plan. In this situation, Paulk wants to continue paying on the Green Tree contract debt to retain possession.

Green Tree, as a matter of obvious economic expediency, has filed a claim and has accepted

8

Case 07-70016-CMS    Doc 17    Filed 04/02/07    Entered 04/02/07 15:19:09    Desc Main
Document      Page 8 of 10

her monthly payments on a regular basis, even though it has taken the position since November 20, 2006, that they have been inadequate. Green Tree's decision is based on its need to collect as much as possible against depreciating collateral consisting of an almost 10-year-old mobile home. Green Tree's 2005 claim stated the balance under the contract was then $46,507.02. In May of 2006, Green Tree's affidavit valued the mobile home securing the debt at $26,059.47.

> Justice Cardozo stated long ago that:
>
> We are not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions, though it was entered by consent. ... A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need. ...

Swift Company, 286 U.S. at 114. However, conditions must be such that continued enforcement of the injunction is inequitable. The Supreme Court in Swift was dealing with a consent order arising after years of complex antitrust litigation. The Court stated that:

> Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed after years of litigation with the consent of all concerned.

Swift, 286 U.S. at 119.

Fed. R. Civ. P. 60(b)(5) (applied in bankruptcy by Rule 9024) also provides in pertinent part that a Bankruptcy Court may relieve a party from a final judgment if ".. [I]t is no longer equitable that the judgment should have prospective application. ..." Bankruptcy courts, as courts of equity, can reimpose the automatic stay in appropriate circumstances. See Westinghouse Credit Corp. v. Prime, Inc., (In re Prime, Inc.) 26 B.R. 556, 559 (Bankr. W.D. Mo. 1983).

However, as the Supreme Court pointed out in Swift, while the entering court has the power to modify, it must determine whether "enough has been shown to justify its exercise." Swift, 286 U.S. at 115. The court, in deciding whether or not to reimpose the stay (or codebtor stay under 11 U.S.C. § 1301) must balance the interests of the debtor and the creditor, never ignoring the rights of secured creditors to be adequately protected. Prime, Inc., 26 B.R. at 559.

The court has carefully considered the evidence in this case, and finds that the debtor has shown that it would be equitable and "appropriate" under Section 105(a) to reimpose the stay, even

9

if it, in fact, had lifted, conditioned on Paulk's timely remission to Green Tree of any deficiency amount on Thomas' debt secured by the mobile home.

Consequently, the court will direct Green Tree to compute and verify the deficiencies; and, as soon as possible, notify Paulk and her attorney of the total amount of any such default. Further, upon this notice, Paulk shall pay any deficient amount directly to Green Tree within thirty (30) days of said notice.

## CONCLUSION

To the extent stated above, judgment must be entered **IN FAVOR OF THE PLAINTIFF**, and **AGAINST THE DEFENDANT** in AP 07-70016.

A separate order, consistent with these findings pursuant to Fed. R. Bankr. P. 7052, will be entered separately.

**DONE and ORDERED** this April 2, 2007.

/s/ C. Michael Stilson
C. Michael Stilson
United States Bankruptcy Judge

10